UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 07-30100-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | JOHN NYSTROM'S MOTION TO |
| EDWIN LEE PATZER, | ) | SEVER |
| SCOTT RAUE, | ) | AND GRANTING |
| JOHN NYSTROM, | ) | PATRICIA HAWK'S MOTION |
| PATRICIA HAWK, and | ) | TO SEVER |
| BRADY HASTINGS, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Defendant John Nystrom has filed a motion seeking to sever the trial of counts 40-46 in the indictment from the trial of the remaining counts in this 55-count indictment.  Defendant Patricia Hawk has filed a similar motion, seeking to sever her trial on count 54 from that of the remaining co-defendants on the remaining 54 counts.  These motions were referred to this magistrate judge for determination by Chief United States District Judge Karen E. Schreier pursuant to 28 U.S.C. § 636(b)(1)(A).

**FACTS**

The facts, insofar as they are relevant to Mr. Nystrom and Ms. Hawk's motions to sever, are as follows.  The superseding indictment in this case

contains 55 separate counts.  In counts 1-13 of the superseding indictment, co-defendant Edwin Lee Patzer is charged with giving money to co-defendant Scott Raue as an agent of the Crow Creek Tribal Schools[1] with the intent to bribe Mr. Raue on 13 separate occasions from June 24, 2005, through February 1, 2006.  Counts 14-26 are the mirror image of the first 13 counts in that they charge Scott Raue with the offense of receiving the bribes with which Mr. Patzer is charged in the first 13 counts.

Count 27 charges Scott Raue with accepting bribes from an unspecified person on March 24, 2003, with the intent to allow himself to be influenced and rewarded in connection with business transactions involving the Crow Creek Tribal Schools.  Counts 28 and 29 charge Scott Raue with money laundering–with structuring two financial transactions on March 24, 2003, so as to conceal the nature of the transaction, knowing that the proceeds of the transaction represented at least some of the proceeds of a bribe.

Counts 30 and 31 charge Scott Raue with accepting a bribe from Kutz Construction on October 1, 2004, and between October 11, 2005, and February 15, 2006, respectively.

---

[1]Every time the indictment mentions Crow Creek Tribal Schools, the indictment also mentions in the alternative the Crow Creek Sioux Tribe.  For brevity, the court has shortened this reference to the school alone.  However, each such reference should be understood by the reader to refer to the school or the tribe or both.  Distinguishing between the two tribal entities is not relevant to any of the issues discussed in this opinion.

Count 32 charges that Scott Raue, with unnamed others, devised a fraudulent scheme to obtain money under false pretenses on or about December 6, 2005.  This count specifically avers that part of the fraudulent scheme involved Richard Dean Baysinger presenting invoices to Nystrom Electric for work that was never done and that Nystrom Electric would then issue a check to Baysinger, who would share some of the proceeds of the check with Raue.[2]

Counts 33 through 38 of the indictment charge Scott Raue and Richard Dean Baysinger with money laundering in connection with six checks in December, 2005.  The indictment does not explain whether these checks were drawn on the Nystrom Electric bank account, on Mr. Baysinger's bank account, or on Mr. Raue's bank account.

Count 39 charges Scott Raue with embezzling $5,000 and more from the Crow Creek Tribal Schools on or about December 6, 2005, and converting it to Nystrom Electric.

Counts 40-46 alone are the focus of John Nystrom's motion to sever. These counts charge that John Nystrom gave money to Scott Raue to bribe him as an agent of the Crow Creek Tribal Schools on 7 separate occasions between

---

[2]Richard Dean Baysinger is charged in a separate court file with a separate indictment.  See Case No. 07-cr-30101.  It is unknown to the court what his relationship is, if any, to John Nystrom or Nystrom Electric.  In addition, neither the original indictment nor the superseding indictment in Mr. Nystrom's case indicate the relationship between John Nystrom and Nystrom Electric.

3

January and December, 2005.  Counts 47-53 are the mirror image of counts 40-46 in that they charge Scott Raue with accepting the bribes given by John Nystrom as charged in counts 40-46.

Count 54 charges Scott Raue, Patsy Hawk, and Brady Hastings with embezzling money from the Crow Creek Tribal Schools.

Count 55 charges Scott Raue and Brady Hastings with money laundering in connection with the withdrawal of $5,000 from a bank account with check number 5386 on July 18, 2005.

Thus, the superseding indictment contains only 7 counts that actually charge John Nystrom with crimes–counts 40-46.  However, as indicated above, the activities of either John Nystrom or Nystrom Electric are part of the averments in support of counts 32, 39, and 47-63.  Specifically, counts 47-53 would involve proof of nearly the exact same facts as counts 40-46 since counts 40-46 charge Mr. Nystrom with *giving* bribes to Scott Raue, and counts 47-53 charge Mr. Raue with *accepting* those same bribes.

Ms. Hawk is charged in only one of the 55 counts.  Furthermore, Ms. Hawk is not mentioned at all in any count save count 54.

Prior to the court's decision on these motions to sever, Edwin Patzer and Brady Hastings both entered pleas of guilty pursuant to plea agreements.

Thus, counts 1-13 will not be part of any trial against Mr. Nystrom or

Ms. Hawk.[3]

## DISCUSSION

**A.    Severance Pursuant to Fed. R. Crim. P. 8(b)**

Federal Rule of Criminal Procedure 8(b) provides as follows:

> **Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

See Fed. R. Crim. P. 8(b).  The court has no discretion to deny severance of

defendants who are not properly joined under Rule 8(b).  See United States v.

Bledsoe, 674 F.2d 647, 654 (8th Cir.), cert. denied sub nom, 459 U.S. 1040

(1982).  Misjoinder of defendants under Rule 8(b) is inherently prejudicial.  Id.

(citing United States v. Sanders, 563 F.2d 379, 382 (8th Cir. 1977), cert. denied,

434 U.S. 1020 (1978);  Haggard v. United States, 369 F.2d 968, 972-973 (8th

Cir. 1966), cert. denied, 386 U.S. 1023 (1967); United States v. Marionneaux,

514 F.2d 1244, 1248 (5th Cir. 1975); 8 Moore's Federal Practice ¶ 8.04(2), at 14

(2d ed. 1981)).

---

[3]Mr. Patzer pleaded guilty to count one of the indictment and counts two through thirteen are being dismissed by the government upon acceptance of the plea and imposition of sentence on count one by the court.  Mr. Hastings is pleading guilty to an information charging a single violation of 18 U.S.C. § 1163; counts 54 and 55 as against Mr. Hastings are being dismissed by the government upon acceptance of the plea and imposition of sentence on this plea by the court.

### 1.    Propriety of Joinder Must Appear on the Face of the Indictment

There is some tension in the precedent of the Eighth Circuit as to whether the propriety of joinder under Rule 8(b) must appear on the face of the indictment.  There is some authority suggesting that the government may bolster the propriety of joinder by supplementing the information in the indictment with other facts.  See generally 1A Charles A. Wright, Fed. Practice & Procedure (Criminal) § 144, 62-63 (3d ed. 1999).  However, the majority rule, especially among more recent opinions, is that "Rule 8(b) is a pleading rule and the propriety of joinder is determined by the allegations in the indictment." Id. at 63.  The court clarifies the law on this point because, although the government in its responsive brief states that the propriety of Mr. Nystrom's Rule 8(b) motion must be judged from the face of the indictment alone, the government's brief sets forth a whole host of facts that are not contained in the indictment.

The most recent statement on the issue in the Eighth Circuit holds that "[a]n indictment must reveal on its face a proper basis for joinder." United States v. Wadena, 152 F.3d 831, 848 (8th Cir. 1998); Bledsoe, 674 F.2d at 655. The Eighth Circuit addressed this issue at length in United States v. Grey Bear, 863 F.2d 572 (8th Cir. 1988) (en banc), an evenly divided 5-to-5 opinion.  When an evenly divided en banc opinion is issued, it has no precedential value and only applies to the case it decides.  United States v. Lara, 294 F.3d 1004, 1006-

6

1007 (8th Cir. 2002); <u>Grey Bear</u>, 863 F.2d at 573.  Therefore, the <u>Grey Bear</u> decision does not represent the law of the Eighth Circuit.  However, the analysis in the opinion issued by then-Chief Judge Lay and joined in by Judges Heaney, McMillian, Arnold, and Wollman is instructive.

In Chief Judge Lay's opinion, he wrote, "The Supreme Court has consistently acknowledged that Rule 8(b) is a pleading rule, to be applied before trial by examining allegations in the indictment."  <u>Grey Bear</u>, 863 F.2d at 576 (citing <u>United States v. Lane</u>, 474 U.S. 438 (1986); <u>Schaffer v. United States</u>, 362 U.S. 511 (1960)).  Chief Judge Lay also referred to the text of Rule 8(b) for support.  <u>Id.</u> at 576-577.  He noted that the rule appears in the section of the Federal Rules of Criminal Procedure entitled "Indictment and Information."  <u>Id.</u>  Also, Chief Judge Lay noted that the text of the rule refers to defendants who are "*charged* in the same *indictment* . . . if they are *alleged* to have participated in the same act or transaction."  <u>Id.</u>  Through the use of the italicized words, Chief Judge Lay concluded that the rule itself refers solely to the allegations in the indictment as the only basis for determining whether joinder is proper.  <u>Id.</u>

In <u>Grey Bear</u>, the government argued that <u>Bledsoe</u> court looked beyond the indictment to determine whether joinder was proper.  However, as Chief Judge Lay pointed out in <u>Grey Bear</u>, the <u>Bledsoe</u> court looked to other evidence at trial *only* in determining whether the misjoinder by the district court was

prejudicial, the standard of appellate review applicable to claims of misjoinder at the district court level.  Grey Bear, 863 F.2d at 577.  In determining whether misjoinder had occurred in the first place, Chief Judge Lay stated that the Bledsoe court restricted its analysis to the face of the indictment.  Id.

The position articulated by Chief Judge Lay has become the law in the Eighth Circuit.  See Wadena 152 F.3d at 848.[4]  Furthermore, no federal circuit court has adopted a position contrary to Chief Judge Lay's analysis in the nearly 20 years since his opinion in Grey Bear was issued.

The Eleventh Circuit took note of the split by the judges who participated in the Grey Bear decision and also admitted ambiguity in the Eleventh Circuit's opinions and definitively held that Rule 8(b) is a pleading rule and that joinder under that rule should be determined by examining only the allegations contained in the indictment.  United States v. Morales, 868 F.2d 1562, 1567-1568 (11th Cir. 1989).  The Morales court noted that this is the approach adopted by the majority of circuit courts to have recently addressed the issue. Id. (citing United States v. Kaufman, 858 F.2d 994, 1003 (5th Cir. 1988); United States v. Moya-Gomez, 860 F.2d 706, 767 (7th Cir. 1988); Lane, 474 U.S. at

---

[4]The Wadena opinion was decided by Judge Lay, Judge Beam, and Judge McMillian.  Wadena, 152 F.3d at 836.  Judge Beam had originally joined in the statement in opposition to then-Chief Judge Lay's opinion in the Grey Bear case.  Grey Bear, 863 F.2d at 580.  In Wadena, Judge Beam switched his position and concurred in the majority opinion as to the Rule 8(b) severance issue.  Wadena, 152 F.3d at 857 n.34.  Thus, after Wadena, six of the 10 Eighth Circuit appellate judges had voted in different cases in favor of the position set forth by Judge Lay.

447; <u>Schaffer</u>, 362 U.S. at 515; <u>United States v. Friedman</u>, 854 F.2d 535, 561 (2d Cir. 1988)).  This trend has held in the 17 years since the Eleventh Circuit decided <u>Morales</u>.  <u>See</u> <u>United States v. Irizarry</u>, 341 F.3d 273, 287 (3d Cir. 2003), <u>cert. denied</u>, 540 U.S. 1140 (2004) (reviewing propriety of joinder under Rule 8(b) solely by the allegations in the indictment); <u>United States v. Lanas</u>, 324 F.3d 894, 899 (7th Cir. 2003) (stating that "in assessing whether joinder was proper, we look solely to the face of the indictment . . .").

The law of this circuit, in accord with the law in the above-discussed circuits, is that motions to sever pursuant to Fed. R. Crim. P. 8(b) should be evaluated on the face of the indictment alone.  <u>Wadena</u>, 152 F.3d at 848; <u>Bledsoe</u>, 674 F.2d at 655.  Accordingly, this court will apply that law.  The extra-indictment facts recited by the government in its brief will not be considered by the court in ruling on Mr. Nystrom's Rule 8(b) motion.

**2.    Propriety of Joinder Under Rule 8(b) Based on the Face of the Indictment**

The Supreme Court has expressed a preference in the federal system in favor of joint trials of defendants who are indicted together.  <u>Zafiro v. United States</u>, 506 U.S. 534 (1993).  Joint trials play a vital role in the system of criminal justice by promoting efficiency and the interests of justice by avoiding inconsistent verdicts.  <u>Id.</u> (citing <u>Richardson v. Marsh</u>, 481 U.S. 200, 210 (1987)).

However, the prerequisites for joinder of defendants under Rule 8(b) are to be liberally construed in favor of the defendant.  <u>Bledsoe</u>, 674 F.2d at 655. Mere similarity of offenses committed by two or more individuals is not a sufficient predicate for joinder of *defendants*.  <u>Id.</u> at 656.  Under Rule 8(a), involving joinder of *offenses*, the government is allowed to join two or more offenses if they are "of the same or similar character."  <u>Id.</u> (quoting Fed. R. Crim. P. 8(a)).  However, under Rule 8(b), involving joinder of *defendants*, the phrase "same or similar character" are specifically omitted, making joinder under Rule 8(b) more restrictive.  <u>Id.</u> (citing Rule 8(b)).

"Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense." <u>Bledsoe</u>, 674 F.2d at 656.  "In order to be part of the 'same series of acts or transactions,' acts must be part of one overall scheme about which all joined defendants knew and in which they all participated."  <u>Id.</u> (citing <u>United States v. McKuin</u>, 434 F.2d 391, 395-396 (8th Cir. 1970), <u>cert. denied</u>, 401 U.S. 911 (1971)).  "Although a conspiracy count is not always essential for joinder of counts which do not all include every joined defendant, in the absence of such an allegation, other facts must be alleged which at least suggest the existence of an overall scheme encompassing all the defendants and all the charged offenses."  <u>Bledsoe</u>, 674 F.2d at 656-657.

10

In the Bledsoe case, five defendants were tried: Bledsoe, Cloninger, Moffitt, Phillips, and Stafford. Id. at 651-652. Count one of the indictment charged all five defendants with conspiracy to violate RICO under 18 U.S.C. § 1962(d). Id. Count two of the indictment contained numerous predicate acts and charged all five defendants with violating RICO under 18 U.S.C. § 1962(c). Id. Counts three and four charged four defendants, including Phillips, with fraudulent sale of Progressive Farmers Association securities under 15 U.S.C. §§ 77q(a) and 77x and 18 U.S.C. § 2. Id. Counts three and four were included in the predicate acts listed in count two. Id. Counts five and six charged Phillips alone with fraudulent sale of Progressive Investors securities under 15 U.S.C. §§ 77q(a) and 77x. Id. The allegations in counts five and six were *not* predicate acts for count two. Id. Thus, counts five and six charged a crime that was unrelated to any of the other crimes contained in the other counts and these counts also did not involve the other defendants from the other counts. Id.

Defendants Bledsoe, Cloninger, Moffit, and Stafford moved pursuant to Rule 8(b) to sever counts five and six from the trial of counts one through four. Id. at 654. The district court denied this motion and the Eighth Circuit reversed. Id. at 654, 671. The government argued on appeal that joinder of counts five and six did not violate Rule 8(b) because the *modus operandi* described in counts five and six were the same as that in counts one through

four because all six accounts involved selling securities labeled "Estate Builder." Id. at 656.  The court rejected this argument, noting that similarity of offenses would be sufficient to justify joinder of the *offenses* under Rule 8(a), but that it was not sufficient to justify joinder of *defendants* under Rule 8(b). Id.  The government also argued that Phillips' common participation in counts three, four, five, and six was sufficient to justify joinder of the counts.  Id.  The court rejected this argument too because the indictment on its face showed no participation by the defendants other than Phillips in counts five and six and no factual overlap between counts one through four and counts five and six. Id.  See also United States v. Jones, 880 F.2d 55, 61 (8th Cir. 1989) (stating that Rule 8(a) and (b) "do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses."); United States v. Andrade, 788 F.2d 521, 529 (8th Cir. 1986) (stating that "Rule 8(b) requires that there be some common activity involving all the defendants which embraces all the charged offenses, but it is not necessary that each defendant have participated in each act or transaction of the series.")

Similarly, in Chubet v. United States, 414 F.2d 1018, 1018-1019 (8th Cir. 1969), defendants Chubet and Kauffman were charged and tried together in an indictment containing six counts alleging possession and sale of amphetamine. Two of the counts named both defendants in sales of amphetamine that occurred in Blue Springs, Missouri, and Jackson County, Missouri, on

February 21 and 23, 1967, respectively.  Id.  Kauffman was charged in four other counts which did not name Chubet.  Id.  These four other counts involved the sale of amphetamine in Springfield, Missouri, on February 10, 1967; in Columbia, Missouri, on February 21, 1967; in Columbia, Missouri, on February 23, 1967; and in Jackson County, Missouri, on March 2, 1967.  Id.

Chubet moved for severance pursuant to Fed. R. Crim. P. 8(b) prior to trial.  Id.  The district court denied Chubet's motion, and the Eighth Circuit reversed.  Id. at 1018-1019, 1022.   The court stated that the fact that Kauffman was a common thread in all six charges in the indictment was insufficient to justify jointly trying Chubet and Kauffman together where the indictment contained no allegation linking Chubet to the counts in the indictment charging Kauffman alone.  Id. at 1020.  See also McElroy v. United States, 164 U.S. 76, 76-81 (1896) (interpreting Section 1024 of the Revised Statutes, a predecessor to Fed. R. Crim. P. 8(b), and stating "we do not think the statute authorizes the joinder of distinct felonies, not provable by the same evidence, and in no sense resulting from the same series of acts.").

In Andrade, the defendants were charged in a multicount indictment alleging mail fraud, wire fraud, and conspiracy in connection with a scheme to defraud several commercial airlines.  Andrade, 788 F.2d at 522.  The fraudulent scheme, devised by one central defendant, consisted of obtaining airline tickets through the unauthorized use of credit cards.  Id.  The

13

defendants would then either sell, use, or cash in the tickets.  Id.  Two of the defendants argued on appeal that the district court had abused its discretion by failing to sever their trials from those of other defendants.  Id. at 528.  The court held that the indictment's allegation that the defendants worked together to "devise a scheme to defraud various airline companies" was sufficient to establish each of the defendants' participation in "the same act or transaction or in the same series of acts or transactions constituting an offense or offenses" such that joinder was proper under Rule 8(b).  Id. at 529.

### 3.    Application of the Law to Mr. Nystrom's Motion

Applying the above law to the facts before the court, the mere fact that Scott Raue is alleged to have participated in all the offenses is insufficient to satisfy the requirements of Fed. R. Crim. P. 8(b).  See Bledsoe, 674 F.2d at 656; Chubet, 414 F.2d at 1020.  Nor is the fact that the offenses were committed with the same *modus operandi*.  Bledsoe, 674 F.2d at 656.  However, it is equally clear that Mr. Nystrom's argument is *not* true that none of the other counts in the indictment save counts 40-46 involve him.  In particular, counts 47-53 are the mirror image of counts 40-46 and would involve proof of the exact same facts:  in counts 40-46 Mr. Nystrom is charged with *giving* the bribes with which Mr. Raue is charged with *receiving* in counts 47-53.

Additionally, although this indictment does not contain a conspiracy count, count 32 alleges that Scott Raue, with unnamed others, devised a fraudulent scheme involving the presentation of false invoices to Nystrom

14

Electric, and the payment by Nystrom Electric of those false invoices, followed by the distribution of the fraudulently-obtained monies in part to Scott Raue. This fraud count is alleged to have occurred on or about December 6, 2005. Therefore, Nystrom Electric is alleged to have participated, whether knowingly or unknowingly, in the fraudulent scheme to present and pay false invoices for work that was never done.

Also, count 39 alleges that on or about December 6, 2005, the same date as the fraud count in count 32, Scott Raue embezzled $5,000 and more from the Crow Creek Tribal Schools and converted it to Nystrom Electric. Again, although the indictment does not indicate whether Nystrom Electric's participation in this receipt of embezzled funds was knowing or unknowing, the indictment sets forth the fact of Nystrom Electric's participation.

"Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense." Bledsoe, 674 F.2d at 656. "In order to be part of the 'same series of acts or transactions,' acts must be part of one overall scheme about which all joined defendants knew and in which they all participated." Id. (citing United States v. McKuin, 434 F.2d 391, 395-396 (8th Cir. 1970), cert. denied, 401 U.S. 911 (1971)).

Applying this standard to the indictment before the court, it is clear that Mr. Nystrom's motion cannot be granted.  Mr. Nystrom seeks to receive a trial of counts 40-46 alone.[5]  This is not possible under the above law.  While it is true that Mr. Nystrom is not charged in any counts other than 40-46, the indictment avers his knowledge of the charges contained in counts 47-53, and the participation of his company in counts 32 and 39.  Count 32 contains an averment that Nystrom Electric was part of an overall scheme of fraud.  It is not necessary that Mr. Nystrom have participated in or be charged in every count in the indictment in order for severance to be denied to him.  Instead, it is enough if he is part of the same series of acts and transactions that form an overall scheme.  That is adequately set forth in the indictment sufficient to deny Mr. Nystrom a trial on counts 40-46 alone.  Andrade, 788 F.2d at 529.

The two cases cited in support of his motion by Mr. Nystrom are inapposite.  In United States v. Lech, 161 F.R.D. 255 (S.D.N.Y. 1995), the seven-count indictment in that case charged defendants Russo and Fulton with three counts of conspiracy, bribery, and mail fraud in connection with a construction project on Eastern Parkway in Brooklyn involving the New York City Board of Education.  Id. at 255.  The same two defendants and defendant

_____

[5]Mr. Nystrom did not seek in his motion, and this court does not address, whether Mr. Nystrom would be entitled to severance of counts 32, 39, 40-46, and 47-53 from the rest of the indictment.  It is enough for purposes of the motion framed by Mr. Nystrom to note that he is not entitled to trial of counts 40-46 by themselves.

Lech were then charged with two counts of conspiracy and bribery in connection with the same educational board in connection with a construction project on the Julia Richman High School.  Id.  The final two counts of the indictment charged Russo alone with conspiracy and bribery with regard to the same educational board in connection with a property at 125th Street in Manhattan.  Id.  The indictment did not allege that Lech knew of or participated in either the Eastern Parkway project or the 125th Street project.  Id.  Lech moved pursuant to Rule 8(b) to sever his trial from that of Russo and Fulton.  Id.  The court held that Lech's lack of knowledge or participation in the other two projects supported severance of his trial under Rule 8(b).  Id. at 256-258.  Here, of course, the same cannot be said.  The indictment charges Mr. Nystrom's knowledge or participation in at least nine other counts besides the counts he is specifically charged in.  The other case cited by Mr. Nystrom, United States v. Gentile, 60 F.R.D. 686 (E.D.N.Y. 1973), is distinguishable for the same reason.

Based on the above discussion, the court denies Mr. Nystrom's motion to sever pursuant to Fed. R. Crim. P. 8(b).

### 4.     Application of the Law to Ms. Hawk's Motion

The above law makes clear that the trial of Ms. Hawk on the single charge of embezzlement from Crow Creek Tribal School should be severed from the trial of the remaining counts.  Ms. Hawk is not so much as mentioned in the other 54 counts in the indictment.  Her knowledge and participation in the

17

other counts of the indictment is never alleged anywhere in the indictment. The only connection between the count Ms. Hawk is charged in–count 54–and the remaining 54 counts in the indictment is the common participation of Scott Raue.  Neither the common participation of Mr. Raue in all the offenses, nor a common *modus operandi* between count 54 and the other counts is sufficient to satisfy the requirements of Fed. R. Crim. P. 8(b).  See Bledsoe, 674 F.2d at 656;  Chubet, 414 F.2d at 1020.

The government joined in Ms. Hawk's motion to sever the counts against her.  However, the government's motion agrees to severance of "counts 54 and 55."  As indicated above, Ms. Hawk is not charged in count 55 nor is she mentioned in any way in that count.  Accordingly, the court will grant Ms. Hawk's motion to sever her trial on count 54.

The Federal Rules of Criminal Procedure do not explicitly state the remedy available to the court to cure misjoinder.  However, Fed. R. Crim. P. 14 is instructive in that it provides that in the event of prejudicial misjoinder "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  See Fed. R. Crim. P. 14(a).  Accordingly, the court finds that the government can elect the manner in which it will proceed to trial, either severing Ms. Hawk from the other defendants and trying her alone, or severing count 54 from the other counts and trying all defendants charged in that count together in a separate trial.

18

**B.      Severance Pursuant to Fed. R. Crim. P. 14**

Mr. Nystom's motion has been denied insofar as it relies upon Fed. R. Crim. P. 8(b).  However, Mr. Nystrom also argues in the alternative for severance based upon prejudice as provided in Fed. R. Crim. P. 14(a). Accordingly, the court will also address that basis for Mr. Nystrom's motion.

Once it is determined that defendants are properly joined, "[t]he presumption against severing properly joined cases is strong."  United States v. Ruiz, 412 F.3d 871, 886 (8th Cir. 2005).  "Under Fed. R. Crim. P. 14(a), the issue of severance is entrusted to the sound discretion of the trial judge." United States v. Hively, 437 F.3d 752, 765 (8th Cir. 2006) (internal quotation omitted).

Even if joinder of two or more defendants is proper under Rule 8(b), the court may sever the defendants' trials under Fed. R. Crim. P. 14 if joinder of the defendants appears to prejudice a defendant or the government.  United States v. Davis, 534 F.3d 903, 916 (8th Cir. 2008).  The fact that a defendant is alleged to have played a small role in the overall scheme or conspiracy is not dispositive of whether severance should be granted.  United States v. Anthony, 565 F.2d 533, 538 (8th Cir. 1977).

A defendant who seeks severance under Rule 14 must show "real prejudice."  Davis, 534 F.3d at 916.  "Real prejudice" consists in showing (1) that the moving defendant's defense "is irreconcilable with that of his co-defendant or (2) the jury will be unable to compartmentalize the evidence as it

19

relates to the separate defendants." <u>Id.</u> at 916-917 (quoting <u>United States v.</u>

<u>Mickelson</u>, 378 F.3d 810, 817-818 (8th Cir. 2004)).

"Severance is not required merely because evidence that is admissible

only against some defendants may be damaging to others, . . ." <u>Mickelson</u>, 378

F.3d at 818. "Nor is it enough for a defendant to claim, . . . that he needed a

separate trial in order to call a co-defendant as a witness. He must show that

it is likely his co-defendant actually would have testified and that this

testimony would have been exculpatory." <u>Id.</u> (citing <u>United States v. Delpit</u>, 94

F.3d 1134, 1143-1144 (8th Cir. 1996)). "Generally, the risk that a joint trial will

prejudice one or more of the defendants 'is best cured by careful and thorough

jury instructions.' " <u>Davis</u>, 534 F.3d at 916-917 (quoting <u>Mickelson</u>, 378 F.3d

at 818; and citing <u>Zafiro</u>, 506 U.S. at 537).

Here, although Mr. Nystrom alleges that he will be prejudiced, he makes

no specific argument or showing that his defense is irreconcilable with that of

Mr. Raue or that the jury would be unable to compartmentalize the evidence as

it relates to Mr. Raue and Mr. Nystrom.[6]  Mr. Nystrom supported his motion to

sever with an affidavit from Mr. Raue in which Mr. Raue swears under oath

that his testimony, should he be called upon to testify at a separate trial of

Mr. Nystrom, would be that he received money from John Nystrom for personal

---

[6]The court discusses only Mr. Raue as a potential other co-defendant as
Hastings and Patzer have pleaded guilty and the trial of Patricia Hawk was
severed earlier in this opinion from the trial of Mr. Nystrom.

reasons and that the money Raue received was not connected in any way to Nystrom Electric's work at Crow Creek Tribal School nor was such money a bribe.  See Affidavit of Scott Raue, Docket No. 101, Attachment No. 1.

In essence, then, Mr. Raue indicates that he would testify that Mr. Nystrom was innocent.  Presumably, this position would not be contrary to any defense asserted by Mr. Nystrom on his own behalf.  Thus, there is no showing that Mr. Nystrom's defense and Mr. Raue's defense are irreconcilable. Severance, if it is to be granted, would have to rest on a finding that the jury would be unable to compartmentalize the evidence against each defendant.

In this vein, Mr. Nystrom argues that four defendants who have already pleaded guilty to bribing Mr. Raue, would testify against Raue in a joint trial. Those witnesses are Royal Kutz, Richard Baysinger, Edwin Patzer, and Brady Hastings.  Mr. Nystrom argues that the testimony of these four witnesses would have nothing to do with Mr. Nystrom, and that–after "weeks" of testimony from these four witnesses which is completely unrelated to Mr. Nystrom–the jury would not be able to compartmentalize the "two to three days" of testimony that would be introduced against Mr. Nystrom.

However, the indictment itself belies Mr. Nystrom's assertion that the testimony of the four identified witnesses have nothing to do with Mr. Nystrom. As set forth in count 32, Richard Baysinger's involvement in this fraudulent scheme directly implicates Nystrom Electric.  The assertion by Mr. Nystrom

that Kutz, Patzer, and Hastings will testify solely about Mr. Rauer and not about Mr. Nystrom may or may not be borne out at trial.  Scrutiny of the indictment sheds no light on this.  However, Mr. Nystrom's connection to Mr. Raue and to Mr. Baysinger, Mr. Nystrom's knowledge or participation in nine other counts besides the seven counts in which he personally is charged, and the strong presumption against severing under Rule 14(a) when joinder is proper under Rule 8(b), leads the court to conclude that Mr. Nystrom's request for severance under Rule 14(a) should be denied.

Finally, Mr. Nystrom alleges that, if his case is tried separately from Mr. Raue's case, Mr. Raue will testify on Mr. Nystrom's behalf, but that Mr. Raue might not testify if the two defendants are tried together.  The court finds this assertion speculative.  Certainly, if severance was granted and Mr. Nystrom's trial took place first, Mr. Raue would face the same difficult choice about whether to take the witness stand as he would if it were his own trial because of the possibility of self-incrimination on as-yet unresolved criminal charges.  Therefore, even if severance were granted, there is a very real possibility that Mr. Raue would not testify in any event.

The Mickelson case cited by Mr. Nystrom supports a finding that severance is inappropriate in this case.  The defendant in that case asserted that his co-defendant would testify if their trials were severed.  Mickelson, 378 F.3d at 818.  The court noted that, before severance could be granted, the

defendant must show that his co-defendant's testimony would be "substantially exculpatory." Id. In that case, the co-defendant agreed that, if he were called to testify, he would state that "there was no conspiracy or agreement of any kind to manufacture methamphetamine." Id. The Eighth Circuit concluded that this testimony was not "substantially exculpatory" because it was merely a legal conclusion without facts to support it. Id.

The proffered testimony of Mr. Raue in the present case is on a similar plane. Mr. Raue offers up the conclusory statements that the money given to him by Mr. Nystrom was not a "bribe" and had no connection to the work done by Nystrom Electric for the Crow Creek Tribal School. Even if this testimony were given, it is not "substantially exculpatory." Mikelson, 378 F.3d at 818.

The court notes in this regard that, even though Mr. Nystrom indicates that both he and Mr. Raue gave statements to the FBI, and even though Mr. Nystrom argues that Mr. Raue may very well elect not to testify in a joint trial, Mr. Nystrom has not moved to sever based on Bruton or Fed. R. Crim. P. 14(b). See Bruton v. United States, 391 U.S. 123 (1968). Since severance is not being argued on the basis of admissibility of a co-defendant's statement, the court will not address this issue.

**CONCLUSION**

Based on the foregoing discussion, it is hereby

ORDERED that John Nystrom's motion to sever [Docket No. 101] is denied for the reasons set forth in this opinion. It is further

ORDERED that Patricia Hawk's motion to sever [Docket No. 109] is granted. The government may elect the manner in which it wishes to proceed to trial against Ms. Hawk by notifying the district court at least 30 days prior to the currently-scheduled trial date.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. See Fed. R. Crim. P. 58(g)(2). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require review by the district court.

Dated October 2, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE